CAROL TOUSSAINT, Secretary Department of Local Affairs andDevelopment
Your predecessor asked whether certain apartment buildings, owned and operated by private, nonprofit corporations, and occupied to a certain extent by elderly tenants, qualify for general property tax exemption under sec. 70.11(4), Stats. The pertinent portion of that statute, which exempts certain property from general property taxes, provides:
 "Property owned and used exclusively by educational institutions offering regular courses 6 months in the year; or by churches or religious, educational or benevolent associations, *Page 233 including benevolent nursing homes and retirement homes for the aged . . . ." (Emphasis supplied.)
The underscored language was added to the statute by ch. 64, Laws of 1967.
Your predecessor stated that this question is one of increasing concern to local government, to your Department, to the Wisconsin Housing Finance Authority, and to the Federal Department of Housing and Urban Development and Farmers Home Administration. Some private nonprofit housing corporations have applied to your Department and to the Wisconsin Housing Finance Authority for approval of the use of certain federal subsidy funds, on the assumption that their apartment buildings will enjoy a tax exempt status. Your Department and the Wisconsin Housing Finance Authority have taken the position that such applications cannot be approved on a tax exempt basis. Your predecessor pointed out that a person need not be retired to rent one of these apartments, but priority must be given to persons over 62 years of age. To achieve a desired occupancy rate, apartments may be rented to persons under 62 years of age, who may, upon notice, be required to vacate in favor of an eligible person over 62 years of age. These buildings must contain certain design features, such as handrails in the corridors, which make the buildings more suitable for elderly residents. Services such as meals, housekeeping, or nursing care are not provided, and the occupant must be capable of living independent of such support services.
A leading case on this subject is Milwaukee Protestant Home v.Milwaukee, 41 Wis.2d 284, 164 N.W.2d 289 (1969). The Milwaukee Protestant Home for the Aged brought an action to have its real and personal property declared exempt from property taxation by the City of Milwaukee. The home was a nonstock, nonprofit, membership corporation organized solely for charitable purposes. The specific purpose, as set forth in its charter, was "`specifically, to own and operate a residence and nursing home for aged persons and to do and perform any and all acts as may be necessary to the furtherance of such purposes.'"41 Wis.2d at 288. The articles of incorporation provided that no part of the home's net earnings should inure to the benefit of or be distributable to its members, directors, officers, or any private shareholder or individual. Since it was founded in 1884, the home held grown from a small *Page 234 
rented house to a complex of buildings and over the years had added several wings. It was the most recent addition, the Bradford Terrace addition, which became the subject of the controversy as to tax exemption. A convalescent center occupied the top two floors of this addition and offered to residents and nonresident patients 34 private and semiprivate rooms, plus modern facilities and nursing care. A physical therapy department occupied the basement and part of the first floor. These facilities were open to all residents of the home. Initial residents of this addition were required to pay a founder's fee, ranging from $8,000 to $15,500 depending on the size of the unit, plus a monthly occupancy charge of from $150 to $160. All income from these fees and charges were to be paid into the endowment fund of the home. Over a million dollars had been borrowed from this endowment fund to build this addition, and it was contemplated that this loan would be repaid, with interest, over a 25-year period. The court explained that Wisconsin law has exempted from taxation' property of a benevolent association used exclusively for benevolent purposes and not used for profit. It pointed out that the 1967 amendment to sec. 70.11(4), Stats., merely clarified the legislative intent, making it clear that the operation of a retirement home for the aged is a proper function of a benevolent institution. The court laid down three requirements for determining whether such institutions would qualify for exempt status. The court said:
 "In order for a retirement home for the aged or a nursing home or a hospital to qualify for exempt status under sec. 70.11, Stats., `. . . it must appear that, (1) appellant is a benevolent association; (2) the personal property is used exclusively for the purposes of such association; (3) the real and personal property is not used for pecuniary profit.' In examining the organizational structure and method of operation, `The facts of each case must be regarded as a whole . . . .' (Emphasis supplied.)" 41 Wis.2d at 293.
The court had no difficulty determining that the home was a benevolent association within the meaning of the statute. It had always operated at a deficit which had to be made up by donors' gifts, withdrawals from its endowment fund. and on occasion, by help from the local community fund. The property of the home was exclusively used for the purposes of the association, and this was not tainted by any paralleling gain or profit to any person or persons. The articles of incorporation prohibited any payments to officers, members, or any *Page 235 
individual, and the fact was that no one had received any such profit since the home was founded in 1884. Further, members, directors, or officers never even received reimbursement for their actual expenses. The court said "In this state a benevolent association must be completely free from the fact or even possibility of profits accruing to its founders, officers, directors or members." 41 Wis.2d at 294. And it found the home 100 percent free of such possibility. 41 Wis.2d at 294, 295.
These, then, are the tests to be applied to determine whether or not a particular nonstock, nonprofit, membership corporation is tax exempt. Its charter and articles of incorporation must be examined to determine whether or not it is really a benevolent association. See Bethel Convalescent Home v. Richfield, 15 Wis.2d 1,5, 6, 111 N.W.2d 913 (1961). If the articles and charter indicate that it is a benevolent association, then a determination must be made as to whether the property of the association is being exclusively used for the purposes of the association and whether the association is completely free from the fact or even the possibility of profits accruing to its founders, officers, directors, or members. According to the majority of the court, a benevolent association may operate so as to make a gain or profit, and this does not take away the benevolent nature of the institution as long as the profit does not go to someone other than the benevolent association itself. When the profit or net income is devoted exclusively to carry on the benevolent purposes of the institution, the association is not operating "for pecuniary profit." A further question may arise if a benevolent association operates only part of its activities at a profit. Then it may be necessary to determine whether there is a "functional relatedness' between these activities and the activities of the enterprise as a whole.
As can be seen from the foregoing, any determination as to tax exempt status must be based upon the specific facts applicable to the private, nonprofit corporation under consideration, using the standards set forth above. A determination must be made as to whether it is a benevolent association, whether its personal property is used exclusively for the purposes of the corporation, and whether its real and personal property are used for pecuniary profit.
Tax exemption statutes are usually strictly construed against exemption. 41 Wis.2d at 303. In reaching a conclusion as to whether a particular corporation is tax exempt, one must first determine *Page 236 
whether the corporation has the purpose of owning or operating a benevolent retirement home for the aged. In order to qualify as "benevolent," the persons to be benefitted need not be "objects of charity," but the classification must have some limits, i.e., "[t]o help retired persons of moderate means live out their remaining years." 41 Wis.2d at 300. Further, all phases of the operation of any such retirement home should have the common denominator of serving aged and retired persons.41 Wis.2d at 301. Also, there must be a significant age limitation as to occupant eligibility. It has been said that the age of 65 is generally considered the "threshold to old age." State ex rel.Harvey v. Morgan, 30 Wis.2d 1, 9, 139 N.W.2d 585 (1966). Although it is difficult to say at what age a person becomes "aged," and an occupancy eligibility limited to persons over 62 years of age would probably not be subject to question, there must be some further limitation to ensure that these apartments are not occupied by persons who are neither retired nor aged. And, as stated before, it must always clearly appear that the corporation is completely free from even the possibility of profits accruing to its founders, officers, directors or members.
Finally, notwithstanding your significant responsibilities in this area, recognition must be given to the fact that local officials, particularly local assessors, are the ones primarily responsible for allowing or disallowing tax exemptions after an examination of the facts on a case-by-case basis.
BCL:JEA *Page 237